UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Transit Management of Southeast Louisiana, Inc. Retirement Income Plan; | * * * * | Civil Action No: |
| v. | * * | Section " " |
| New Orleans Regional Transit Authority and Transit Management of Southeast Louisiana, Inc. | * * * * | Magistrate " " |

\* \* \* \* \* \* \*

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Transit Management of Southeast Louisiana, Inc. Retirement Income Plan, ("Plaintiff"), by and through Glenda Williams, its Plan Administrator, which respectfully files this Complaint, as follows:

### PARTIES

1. The Transit Management of Southeast Louisiana, Inc. Retirement Income Plan, the Plaintiff herein ("the Retirement Plan"), is an "employee pension benefit plan" as defined in §3(2)(a) of the Employment Retirement Income Security Act of 1974 as amended, (hereinafter referred to as "ERISA"), 29 U.S.C.A. §1002(2)(a), established by the defendant, Transit Management of Southeast Louisiana, Inc., for the purpose of providing retirement benefits to its employees. The Retirement Plan is authorized to sue in its individual capacity and to use its own name pursuant to §501(d) (1) of ERISA as

amended, 29 U.S.C.A. §1132(d) (1). Glenda Williams is the Plan Administrator and, as such, is the named fiduciary of the Retirement Plan within the meaning of ERISA, 29 U.S.C. § 1102(A)(1), with authority to control and manage the operation and administration of the Plan and is, therefore, authorized to advance this action on behalf of the Retirement Plan.

2. Made defendants are:

   a. The New Orleans Regional Transit Authority (the "RTA") is a body politic and corporate and a political subdivision of the State of Louisiana created pursuant to La. R.S. 48:1651, *et seq.*, that operates the public transportation system in the New Orleans metropolitan area and which is domiciled in and has its principal place of business in Orleans Parish, State of Louisiana which is within the Eastern District of Louisiana. The RTA is the owner of 100% of the stock of Transit Management of Southeast Louisiana, Inc.

   b. Transit Management of Southeast Louisiana, Inc. ("TMSEL") is a Louisiana corporation with its principal place of business in Orleans Parish, State of Louisiana. TMSEL was the employer of the Participants in the Retirement Plan and an employer within the meaning of §3(5) of ERISA as amended, 29 U.S.C.A. §1002(5), and, as such, the Plan Sponsor. It is domiciled within the Eastern District of Louisiana.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action arises under the Constitution and Laws of the United States, including but not limited to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and (f).

4. Venue is proper in the Eastern District of Louisiana because an action under ERISA can be brought in a district court of the United States where the plan is administered, where the breach took place, or where a defendant resides or may be found pursuant to 29 U.S.C. § 1132(e)(2). The Plan is administered within the Eastern District of Louisiana. The acts complained of herein, including the violations of ERISA, occurred within the Eastern District of Louisiana. Defendants, the RTA and TMSEL, are corporate bodies domiciled and doing business within the Eastern District of Louisiana.

## FACTS

5. Prior to the creation of the RTA, utility and public transportation services in New Orleans, Louisiana, were provided by New Orleans Public Service Incorporated ("NOPSI"). NOPSI was a privately-held company that, today, is known as Entergy New Orleans. In the late 1970's and early 1980's, the public transit system in New Orleans was transformed from one of private operation, by NOPSI, to a publicly held system, owned by the RTA and managed by TMSEL. On or about June 28, 1983, the RTA consummated the purchase of the public transportation system from NOPSI. To fund its acquisition, the RTA relied on grants from the federal government.

6. On August 23, 1978, NOPSI and the City of New Orleans entered into an "Agreement Pursuant to Section 13(c) of the Urban Mass Transportation Act of 1964, as Amended" (the "13(c) Agreement"). The purpose of this agreement was to provide various "fair and equitable arrangements" for the workers of the New Orleans transit system. On March 17, 1983 through a Letter Agreement, the RTA and TMSEL assumed, entirely, the "rights, duties and responsibilities" contained in the 13(c) Agreement of August 23, 1978. The March 17, 1983 Letter Agreement by both TMSEL and the RTA stated that: "The RTA

3

will have the financial liability and The Transit Management of Southeast Louisiana, Inc. will have the administrative responsibilities under the said §13(c) Agreement."

7. Among other requirements, the 13(c) Agreement obligated the RTA, TMSEL and their successors to guarantee retirement benefits for the employees of TMSEL and of the transit system. For example, paragraph 2 of the 13(c) Agreement provided that all rights, privileges and benefits (including pension rights and benefits) of the employees covered by the agreement would be preserved and continued.

8. On June 28, 1983, the RTA, TMSEL and NOPSI made an additional contract recognizing the RTA's obligation to continue the retirement benefits for TMSEL's employees and their dependents. This agreement was entitled "The Employee and Retiree Pension and Welfare Benefit Agreement" (hereinafter, the "Employee Pension Agreement"). The Employee Pension Agreement required that the pension plan created for the transit employees who were transferred from NOPSI to the transit system "be adopted and assumed effective as of the Time of Transfer by a sponsoring employer which is subject to the provisions of Title IV of the Employee Retirement Income Security Act of 1974, as amended."

9. Pursuant to the Employee Pension Agreement, TMSEL caused the TMSEL, Inc. Retirement Income Plan and Trust to be written, adopted and assumed effective as of June 30, 1983. In the June 30, 1983 Trust Agreement, TMSEL acknowledged that it was an employer that was subject to the provisions of Title IV of ERISA. On June 25, 1984, the RTA, TMSEL and the Hibernia National Bank of New Orleans entered into an Interim Trust Agreement that was intended to be part of the TMSEL, Inc. Retirement Income Plan to effectuate the obligations of TMSEL and the RTA under the Employee Pension

Agreement and to hold such sums of money which TMSEL Employees and TMSEL would contribute to the TMSEL Retirement Income Plan on and after June 30, 1983.

10. Thereafter, a determination letter was given by the IRS that the Plan created by TMSEL was a qualified plan under the IRS and ERISA. The Plan has continued to be qualified through the present with the latest determination letter being received from the IRS in 2013.

11. After the determination letter, the Board of Trustees created by the Interim Trust Agreement and TMSEL amended and restated the Interim Trust in the form of the Trust Agreement of Transit Management of Southeast Louisiana, Inc. Retirement Income Plan on October 14, 1986, as contemplated by the parties to the Employee Pension Agreement, to be part of the TMSEL Plan and Trust and intended it to be a qualified and a tax-exempt trust under Section 401 (a) and 501 (a) of the Internal Revenue Code and to comply with all applicable provisions of ERISA.

12. Additionally, the Pension Plan became the subject of collective bargaining by two of the unions whose members were employed by TMSEL. The agreements required that the Plan continue to be an ERISA protected plan; these agreements with this requirement were in effect on the day that the management arrangement for the Transit System was transferred from TMSEL to Veolia Transportation.

13. TMSEL provided services to the RTA pursuant to a Transit System Cooperative Endeavor Agreement that was entered into between the RTA and TMSEL's parent company, Interregional Transit, Inc. The Cooperative Endeavor Agreement provided that the "RTA or its designee" upon termination of the Agreement would "assume responsibility for the payment and performance of all outstanding obligations and become the assignee of all

TMSEL contracts and rights arising out of the management and operation of the Transit System." In 2009, TMSEL ceased operation of the Transit System. All of TMSEL's employees became employees of Veolia Transportation Services, Inc.; as such, they were no longer Active Participants in the Pension Plan. As of September 1, 2009, all of the Participants in the Plan were either retirees of the Plan or terminated Vested Participants. There were no active employees of any entity who participated in the Plan from that date.

14. From September 1, 2009 until January 24, 2012, TMSEL continued to be owned by Interregional and had its obligations assumed by the RTA. During that time through the present, the Plan was not terminated and has continued to be actively managed and controlled, pursuant to the terms of the Plan in existence as of September 1, 2009, by its Plan Administrator and Board of Trustees.

15. On January 24, 2012, the RTA and Interregional entered into the Dissolution of the Transit System Cooperative Endeavor Agreement. In the Dissolution Agreement the Parties state: "TMSEL ceased operations in 2009 and no longer provides services to the RTA." The document, then, provides that the RTA assumes full responsibility for performance of all of TMSEL's outstanding obligations pursuant to the terms of the Cooperative Endeavor Agreement, which includes the payment of all of TMSEL's pension obligations. TMSEL has not performed any services for the RTA since September 1, 2009.

16. To emphasize this, the RTA passed its Resolution No. 12-009 on January 24, 2012. Again, the RTA stated that "neither Interregional nor TMSEL are currently operating or providing any service to any entity, including the RTA." As a further point of emphasis of the lack of any relationship between the RTA and TMSEL other than the assumption

of contractual liabilities, the Auditors of the RTA in their Financial Statements as of and for the Years Ended December 31, 2012 and 2011 and Independent Auditors' Report for the RTA state on page 19 that: "The RTA is a standalone entity as defined by GASB 14, The Financial Reporting Entity, as amended by GASB 61, The Financial Reporting Entity Omnibus. The RTA is neither fiscally dependent on any other local government, nor does it provide specific financial benefits to or impose specific financial burdens on any other government. No other potential component units meet the criteria for inclusion in the financial statements of the RTA." And, on page 33 of the Financial Statements, the Auditors state: "As TMSEL is not a component unit of the RTA, the accounting for the Plan's benefits and obligations as accounted for under Accounting Standards Codification {ASC} 715-30 {formerly FAS 158} are only included in TMSEL's financial statements and included for disclosure purposes in RTA's financial statements."

17. As of January 1, 2009, when TMSEL stop providing services to the RTA, the RTA was required to fund the Retirement Income Plan pursuant to the various contractual arrangements set forth above, including the Cooperative Endeavor Agreement with Interregional. Beginning on January 24, 2012, the RTA became the 100% owner of TMSEL's stock and acknowledged that TMSEL was not performing a governmental function or any function, for that matter, for the RTA. After January 24, 2012 through the present, the Plan has continued to be managed and controlled, pursuant to the terms of the written Plan documents in existence as of September 1, 2009, by its Plan Administrator and its Board of Trustees.

18. In January 2013, the Plan's minimum contributions were not made by either TMSEL or the RTA. Both TMSEL and the RTA have refused to make minimum contributions

beginning in January 2013 and continuing through the present. There exists a funding deficiency in the amount of $27,400,342 as of October 15, 2014 and $27,524,058.00 as of October 31, 2014 as calculated by the Retirement Income Plan's enrolled Actuaries and attached to this Complaint as Exhibit "1".

19. The Employee Benefit Security Administration, of the Department of Labor, and the Pension Benefit Guaranty Corporation ("PBGC") have both been made aware of the refusal by the RTA and TMSEL to make minimum contributions. The Internal Revenue Service has sent the Retirement Income Plan and TMSEL a Funding Deficiency Questionnaire. The Questionnaire inquires as to what steps have been taken to eliminate the funding deficiency that existed during the 2012 Plan Year (the January 15, 2013 contribution was a required payment for the 2012 Plan Year). All three agencies were informed of the intent of the Plan to file a lawsuit to collect the delinquent contributions.

20. The PBGC requires the filing of certain forms when contributions have not been made by a Plan Sponsor for an ERISA Plan. The required PBGC Forms 10 and 200 have been filed for all missed contributions. (A copy of the latest filings is attached hereto as Exhibit "2")

21. Article VIII, Section 8.2 of the Restated Trust Agreement of the Transit Management of Southeast Louisiana, Inc. Retirement Income Plan requires TMSEL to make contributions as required under the provisions of ERISA. The Section further authorizes the Retirement Income Plan to utilize the services of an enrolled actuary to determine the amounts that must be paid by TMSEL using the "terms of the Plan and the funding standards prescribed by law." Finally, the Section authorizes the Board of Trustees to bring "any action or proceeding to enforce collection of any contribution." Article 8,

Section 8.1 of the Retirement Income Plan imposes the same requirements on TMSEL and authorizes the selection of an enrolled actuary to certify the amounts that are due and owing to the Retirement Income Plan.

22. Article 12, Section 12.2 empowers the Trustee to employ agents and to delegate to the agents the duties that it sees fit in the operation of the Retirement Income Plan. Article 9, Sections 9.3 and 9.5 authorize the appointment of a Plan Administrator and gives her "complete discretion to administer the Plan" and "all powers necessary to" manage the Fund.

23. 29 U.S.C.A. §§ 1082 (A) and (B) of ERISA impose upon TMSEL the obligation to satisfy the minimum funding standards determined under Section 1083 of ERISA. Section 1082 (B) (1) imposes the obligation to satisfy the minimum funding standards on each member of a controlled group. Since the RTA is the 100% owner of TMSEL's stock it is a member of TMSEL's controlled group and, therefore, has the obligation under ERISA to satisfy the minimum funding standards for the Plan.

24. 29 U.S.C.A. § 1083 provides the actuarial assumptions that must be used in the calculation of the minimum funding standards for an ERISA Plan. These are the assumptions used by the Plan's Actuaries to calculate the required minimum contributions which TMSEL and the RTA have refused to make.

25. Despite repeated demands advanced by the Plaintiffs, Defendants, the RTA and TMSEL, have failed to timely remit the required minimum contributions due and owing the aforementioned Retirement Income Plan.

## CAUSE OF ACTION
## ERISA CLAIM - PURSUANT TO 29 U.S.C.A. § 1132(A)(1)(B)
## LIABILITY FOR DELINQUENT CONTRIBUTIONS

26.  Plaintiffs adopt and reaver and incorporate by reference herein each of the forgoing, previous paragraphs of the Complaint as if copied here *in extenso* and *in globo*.

27.  The Retirement Income Plan is an "employee pension benefit plan" as defined in §3(2)(a) of ERISA, 29 U.S.C.A. §1002(2) (a).

28.  Defendant, TMSEL, is an employer within the meaning of 29 U.S.C.A. § 1002(5).

29.  Defendant, TMSEL, as the Plan Sponsor and the former employer of the Plan's Participants, is obligated to make contributions to the aforementioned Retirement Income Plan pursuant to 29 U.S.C.A. §§1082 and 1083 and the provisions of the Plan and of the Trust Agreement. Defendant, RTA, as the 100% owner of TMSEL's stock and a member of its controlled group, is required to make contributions pursuant to 29 U.S.C.A. § 1082 (B) (2), the March 17, 1983 Letter Agreement which acknowledged its obligation to fund pension benefits pursuant to the 13 (c) Agreement, the June 28, 1983 Employee Pension Agreement with NOPSI, the Dissolution of the Transit System Cooperative Endeavor Agreement and the RTA's Resolution No. 12-009 passed on January 24, 2012.

30.  Defendants, the RTA and TMSEL, have failed to satisfy their obligations to make contributions in violation of the Plan document, of 29 U.S.C.A. §§ 1082 and 1083 and of the various Agreements and Resolution set forth herein above.

31.  As a direct and proximate result of Defendants', the RTA's and TMSEL's, violations of 29 U.S.C.A. §§ 1082 and 1083 and the provisions of the Plan and of the Trust Agreement, the aforementioned Retirement Income Plan has been deprived of contributions and interest totaling $27,404,342.00 as of October 15, 2014 and

$27,524,058.00 as of October 31, 2014.

32. As a result of Defendants' violations of ERISA and of the provisions of the Plan and the Trust Agreement, the Retirement Income Plan has suffered, and is continuing to suffer, serious damages including but not limited to, the underfunding of the Plan, which could result in the loss and denial of benefits to the Plan's Participants, the possible termination of the Plan, and possible exposure of the Plan's Trustees to liability pursuant to their fiduciary duties set forth in 29 U.S.C.A. §§ 1104, 1105 and 1109.

**WHEREFORE,** the Transit Management of Southeast Louisiana, Inc. Retirement Income Plan, by and through its Plan Administrator, Glenda Williams, Plaintiffs, pray for judgment in their favor and against Defendants, the New Orleans Regional Transit Authority and Transit Management of Southeast Louisiana, Inc., and for the relief which follows:

a. That the Retirement Income Plan be awarded recovery of unpaid contributions owed pursuant to the Plan and Trust Agreements and the provisions of ERISA;

b. That Plaintiffs be awarded prejudgment interest;

c. That Plaintiffs be awarded the cost of prosecuting this claim;

d. The Defendants be enjoined from engaging in future violations of ERISA;

e. That Plaintiffs be awarded a constructive trust over the assets of Defendants for the payment of the missed contributions and of all future contributions;

f. That Plaintiffs be awarded further equitable and injunctive relief as this Court may deem appropriate.

Respectfully submitted,

/s/ Richard A. Goins
**RICHARD A. GOINS, #6082, T.A.**
650 Poydras Street, Suite 2715
New Orleans, Louisiana 70130
Telephone: (504) 596-2455
Facsimile: (504) 529-7197
rgoins@swslaw.com